**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMY MAUER, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. |
| v. | **CLASS ACTION COMPLAINT** |
| AMERICAN INTERCONTINENTAL UNIVERSITY, INC., | |
| AIU ONLINE, LLC, | |
| EVEREST UNIVERSITY, | |
| EVEREST UNIVERSITY ONLINE, | |
| ZENITH EDUCATION GROUP, INC., | |
| ECMC GROUP, INC., | |
| --and-- | |
| JOHN DOE CORPORATION, | |
| *Defendants*. | |

Plaintiff Amy Mauer, individually and on behalf of all others similarly situated (as defined below), by Plaintiff's undersigned attorneys, brings this Class Action Complaint against Defendants, American InterContinental University, Inc., AIU Online, LLC, Everest University, Everest University Online, Zenith Education Group, Inc., ECMC Group, Inc., and John Doe Corporation, alleging based on personal knowledge to herself, and upon information and belief as to all other matters based on the investigation of counsel.

1

## NATURE OF THE ACTION

1.      Intrusive telemarketing is a pervasive and persistent problem – consumer complaints about abuses of telephone technology prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (the "TCPA").

2.      Aimed at protecting consumer privacy, the TCPA prohibits the use of "automatic telephone dialing systems" to call cellular telephones. Calls made using this technology are generally referred to as robocalls.

3.      In passing the TCPA, Congress determined that "unrestrictive telemarketing can be an intrusive invasion of privacy," and that "many consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes."[1]

4.      In order to continue to reap the benefits of illegal telemarketing calls without facing liability for their violations of the TCPA, businesses and telemarketers have become increasingly sophisticated in their attempts to hide the source of their illegal calls.

5.      First, rather than making telemarketing calls on their own, businesses interested in using illegal telemarketing to increase their business often hire a telemarketing company or a "lead generator" to place the initial, illegal, robocall.

6.      In turn, many of these telemarketers use technology to hide or change the number that shows up on the recipient's caller ID.

7.      Even if the caller ID does display the correct phone number, that number is often not set up to receive calls, such that a call placed to that number will often go unanswered or, in any event, will not allow identification of the entity that placed the call.

---

[1] TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227.

2

8.     Finally, telemarketer representatives who talk to call recipients are instructed not to provide any information that could be used to identify the telemarketer or the underlying business.

9.     As a result of these techniques, consumers continue to receive illegal robocalls on behalf of otherwise legitimate businesses at an alarmingly high rate despite the TCPA, the Federal Do-Not-Call List, and other private and governmental efforts to curb them.

10.     Amy Mauer ("Plaintiff") received such an unsolicited, autodialed call on her cellular telephone in March 2015. The call was placed by John Doe Corporation on behalf of the University Defendants[2] as part of a robodialing campaign, the purpose of which was to generate a large number of potential customer "leads" in a short period of time in an effort to enroll them at a university controlled by one of the University Defendants.

11.     Plaintiff brings this action against the Defendants under the TCPA on behalf of herself and others similarly situated. Plaintiff seeks statutory damages for herself and the class and an injunction prohibiting the Defendants from making impermissible robocalls in the future.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. This Court also has federal question subject matter jurisdiction over Plaintiff's claims pursuant to the TCPA, 47 U.S.C. § 277, *et seq*.

13.     Venue is proper in this District in accordance with 28 U.S.C. § 1391 because defendants American InterContinental University, Inc. and AIU Online, LLC reside in this District and a part of the harmful conduct occurred in this District. Convenience, judicial economy, costs, and expeditious discovery and trial processes further militate in favor of venue in this District.

---

[2] As defined in paragraph 24 below, including Everest University and American InterContinental University, Inc.

## PARTIES

14.    Plaintiff is an individual who resides in New Jersey.

15.    American InterContinental University, Inc. is a Georgia corporation with a corporate address of 231 N. Martingale Rd., 6th Floor, Schaumburg, IL 60173.

16.    AIU Online, LLC is a Delaware limited liability corporation with an assumed name of American InterContinental University Online and a corporate address of 231 N. Martingale Rd., 6th Floor, Schaumburg, IL 60173.

17.    American InterContinental University, Inc. and AIU Online, LLC are collectively referred to herein as "AIU."

18.    Everest University is a member of Zenith Education Group, Inc. and has numerous locations throughout the United States.

19.    Everest University Online is a member of Zenith Education Group, Inc. and has its principal offices located at 5701 E. Hillsborough Ave., Suite 2300, Tampa, FL 33610.

20.    Zenith Education Group, Inc. is a Delaware nonprofit corporation that has its offices located at 1 Imation Place, Building 2, Oakdale, MN 55128. Zenith Education Group, Inc. is a nonprofit provider of career school training and a member of ECMC Group, Inc. Zenith Education Group, Inc. has more than 50 campuses in 17 states that make up the largest nonprofit career college system in America.

21.    ECMC Group, Inc. is a Delaware nonprofit corporation that has its offices located at 1 Imation Place, Building 2, Oakdale, MN 55128. ECMC Group, Inc. includes Zenith Education Group, Inc., the nation's largest nonprofit provider of career education, and the nonprofit Educational Credit Management Corporation, one of the largest student loan guaranty agencies in the United States.

22.     Everest University, Everest University Online, Zenith Education Group, Inc., and ECMC Group, Inc. are collectively referred to herein as "Everest."

23.     David Hawn, CEO of ECMC Group, Inc. and President of Zenith Education Group, Inc., earned $716,223 in 2013 as the COO of ECMC Group, Inc. His predecessor as CEO of ECMC Group, Inc. earned $962,916 as CEO in 2013 and $1.1 million in 2010.

24.     AIU and Everest are collectively referred to herein as the "University Defendants."

25.     John Doe Corporation is the telemarketing agency who placed the call to Plaintiff.

26.     The University Defendants and the John Doe Corporation are collectively referred to herein as the "Defendants."

## BACKGROUND

27.     The TCPA gives the Federal Communications Commission (the "FCC") power to create rules and regulations to implement the statute, and the FCC has been prolific in its use of this power.

28.     In 2012, the FCC reiterated that "the benefits to consumers of increased protection from unwanted telemarketing robocalls are significant," and noted "significant ongoing consumer frustration reflected in our complaint data and [ ] positive consumer response to the FTC's proceeding."[3]

29.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[4]

---

[3] *Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Final Rule, 77 F.R. 34233, 34234 (¶2) (2012).
[4] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 (¶ 165) (2003).

30.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[5]

31.     In that same ruling, the FCC reiterated that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violations of the Commission's rules" (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).[6]

32.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."[7]

33.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of … section 227(b) … that are committed by third-party telemarketers."[8]

34.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make

---

[5] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling on Motion by ACA International for Reconsideration*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd. 559, 565 (¶ 11) (2008).
[6] *Id.*
[7] *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).
[8] *In the Matter of the Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al.*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

the calls.[9] A seller may also be liable if it "'ratified' the third-party's acts 'by knowingly accepting their benefits'."[10]

35.     Accordingly, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

36.     Finally, the FCC also emphasized in the May 2013 FCC Ruling that due to the behind-the-scenes nature of relationships between sellers and telemarketers, Courts should consider affording TCPA plaintiffs discovery to establish the basis for vicarious liability for a call which on its face promotes the seller's products or service: "At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."[11]

## FACTS

37.     On information and belief, AIU engages in marketing through the use of telephones, both directly and through use of "lead generators," as well as third-party telemarketers.

---

[9] *Id*. at 6586 (¶ 34); *see Thomas v. Taco Bell Corp.*, No. 12-56458, 582 Fed. Appx. 678, 679, 2014 U.S. App. LEXIS 12547, at *1-2 (9th Cir. July 2, 2014) (finding that the 'district judge properly concluded vicarious liability can provide the basis for liability for a TCPA violation' and assuming, based on the FCC Ruling, that principles of apparent authority and ratification also may provide a basis for liability under section 227(b)).

[10] *City Select Auto Sales, Inc. v. David Randall Associates, Inc*., No. 11-2658, 2014 U.S. Dist. LEXIS 134040, at *14 (D.N.J. Sept. 24, 2014), *citing* 28 FCC Rcd. 6574, 6587 (¶ 34); *Kristensen v. Credit Payment Servs*., 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014).

[11] 28 FCC Rcd. at 6592-93 (¶ 46).

38.     In March 2015, AIU's policy, practice or procedure permitted it to accept new customers that were originally obtained through the placement of automatically dialed and prerecorded voice telephone calls

39.     On information and belief, Everest engages in marketing through the use of telephones, both directly and through use of "lead generators," as well as third-party telemarketers.

40.     In March 2015, Everest's policy, practice or procedure permitted it to accept new customers that were originally obtained through the placement of automatically dialed and prerecorded voice telephone calls.

41.     On March 17, 2015, at approximately 6:35 p.m., John Doe Corporation called Plaintiff's cellular telephone using an automatic telephone dialing system. The caller ID for the call was (603) 913-2771. Upon information and belief and the investigation of counsel, this call was made on behalf of the University Defendants.

42.     When Plaintiff answered, there was a noticeable pause before the representative came on the line, indicating that it was a robocall. The representative claimed to be from an entity called the U.S. Education Network and attempted to obtain information from Plaintiff so that she could "further her education."  Plaintiff tried to obtain more information about the source of the call, but the representative refused to provide such information without receiving more information from Plaintiff.  Plaintiff hung up.

43.     The Defendants have engaged in a complex scheme to perpetrate the conduct complained of herein (from which each benefitted) and have acted in concert, as explained in more detail below.

44. Upon information and belief and the investigation of counsel, the John Doe Corporation placed at least hundreds (if not thousands) of other illegal robocalls from (603) 913-2771. The purpose of these calls is to collect contact and other information that it could then sell as customer "leads" that were valuable to the University Defendants.

45. AIU purchased leads generated from the John Doe Corporation's illegal robocalls in real time, such that the recipient of a robocall from the John Doe Corporation who provided contact information would be contacted by AIU within minutes.

46. AIU benefitted from the illegal robocalls and leads, in part, by the increased business and advertising the scheme generated. AIU used the leads to obtain new students for its universities.

47. The John Doe Corporation acted as AIU's agent in making illegal robocalls in order to obtain leads for AIU.

48. Everest purchased leads generated from these illegal robocalls in real time, such that the recipient of a robocall from the John Doe Corporation who provided contact information would be contacted by Everest within minutes.

49. The John Doe Corporation acted as Everest's agent in making illegal robocalls in order to obtain leads for Everest.

50. Everest benefitted from the illegal robocalls and leads, in part, by the increased business and advertising the scheme generated. Everest used the leads to obtain new students for its universities.

51. Plaintiff has never provided her express written consent to be called on her cell phone by or on behalf of any of the Defendants.

52.     The claims of the Plaintiff, and the class of persons she seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

## COUNT I – TCPA

53.     Plaintiff incorporates all previous paragraphs of this complaint.

54.     It is a violation of the TCPA, 47 U.S.C. §227(b), to call a person's cellular telephone using an automatic telephone dialing system. The TCPA also specifically prohibits the use of any automatic telephone dialing system and/or artificial or prerecorded voice to cell phones. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200.  The John Doe Corporation, on behalf of Everest, initiated a call to Plaintiff and others' cellular telephones, using an automatic telephone dialing system and/or an artificial or prerecorded voice.

55.     The Defendants' calls were negligent, or alternatively, they were willful. 47 U.S.C. §312(f)(1).

56.     Plaintiff and the class have been damaged by the calls that are the subject of this lawsuit because their privacy has improperly and illegally been invaded. Furthermore, Plaintiff seeks an injunction prohibiting Defendants from engaging in similar conduct in the future; a right that Congress specifically conferred upon aggrieved persons like Plaintiff and the class. 47 U.S.C. §227(b)(3).

## CLASS ALLEGATIONS

57.     Plaintiff brings Count I on behalf of a class, which consists of:

All persons nationwide called on their cell phone by or on behalf of one of the Defendants using a device that has the capacity to dial numbers without human intervention and/or an artificial or prerecorded voice, where the called party had not previously provided express written consent, where any call was made on or after January 29, 2012.

10

58.     Plaintiff is a member of this class.

59.     The class is so numerous that joinder is impracticable. Upon information and belief, there are at least hundreds of individuals in the class.

60.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including Plaintiff. The answers to these questions will be dispositive as to the most important issues in the case. They are susceptible to class-wide determination through common proofs, and a single factual or legal determination will be applicable to each class member. Such questions common to the class include, but are not limited to:

        a.    Whether the calls that are the subject of this lawsuit were made using an "automatic telephone dialing system" as proscribed by the TCPA and applicable FCC regulations and orders, and

        b.    Damages, including whether the violations were willful or knowing.

61.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

62.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

63. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

64. Defendants have acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

65. The identity of the class is likely readily identifiable from Defendants' records, or the records of other person(s) involved with making the calls.

66. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of herself and the class and against Defendants that provides the following relief:

a. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful or knowing;

b. A permanent injunction prohibiting Defendants from violating the TCPA in the future through calling cell phones using an automatic telephone dialing system and/or a prerecorded voice message;

c. A declaration that Defendants used an automatic telephone dialing system and artificial or prerecorded voice, and violated the TCPA in using such for calls to the cell phones of Plaintiff and the class; and

d. Any other relief the Court finds just and proper.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: January 28, 2016

Norman Rifkind
**LAW OFFICE OF NORMAN RIFKIND**
100 E Huron Street #1306
Chicago, IL 60611
(847) 372-4747
norman@rifslaw.com
*Local Counsel for Plaintiff Amy Mauer*

Brian D. Brooks
**SMITH SEGURA & RAPHAEL, LLP**
3600 Jackson Street, Suite 111
Alexandria, LA 71303
(318) 445-4480
(318) 487-1741 (fax)
bbrooks@ssrllp.com
*Subject to Admission Pro Hac Vice*

Brian Murray
**GLANCY, PRONGAY & MURRAY LLP**
122 East 42nd Street, Suite 2920
New York, NY 10168
(212) 682-5340
(212) 884-0988 (fax)
bmurray@glancylaw.com
*Subject to Admission Pro Hac Vice*

Matthew C. McManus
**MATTHEW C. MCMANUS, ESQ. PLLC**
3913 Jackson Road, Suite 4
Ann Arbor, MI 48103
(800) 392-7311
(877) 697-2999 (fax)
mmcmanus@mcmanuspllc.com
*Subject to Admission Pro Hac Vice*

*Attorneys for Plaintiff Amy Mauer*